UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 25-cv-81562-Cannon/McCabe

DR. WALEED SAYEDAHMAD, M.D.,
and ATLANTIC ANESTHESIA &
SPINE INSTITUTE, P.A.,

       Plaintiffs,

v.

ENVISION PHYSICIAN SERVICES, LLC,
and EMCARE PHYSICIAN PROVIDERS,
INC.,

       Defendants.

_____/

## REPORT & RECOMMENDATION

THIS CAUSE comes before the Court on Defendants' Motion to Dismiss Count III of Plaintiffs' Complaint, which was referred to the undersigned by United States District Judge Aileen M. Cannon.  (DE 13, DE 18).   For the reasons set forth below, the undersigned **RECOMMENDS** that the motion be **GRANTED**.

## I.    BACKGROUND

This is an employment discrimination case.  The Court accepts the following facts as true, taken from Plaintiffs' Complaint. (DE 1).  Plaintiff is a board-certified physician in anesthesia and interventional pain management.  (DE 1 ¶ 4).  Plaintiff provides medical services to hospitals as an independent contractor through his professional association, co-Plaintiff Atlantic Anesthesia & Spine Institute, P.A. ("Plaintiff's P.A.").  (DE 1 ¶ 15).  Plaintiff is of Arab ancestry and Egyptian national origin.  (DE 1 ¶ 6).

Defendant Envision Physician Services, LLC ("Envision") is a company that provides multispecialty physician services to hospitals. (DE 1 ¶ 7). Defendant Emcare Physician Providers, Inc. ("Emcare") is a subsidiary of Envision and likewise provides physician management services to hospitals. (DE 1 ¶ 8).

On January 27, 2023, Plaintiff's P.A. entered into an independent contractor agreement (the "Agreement") with Defendant Emcare. (DE 1 ¶ 8, DE 13-1). Defendants have provided the Court with a copy of the Agreement. (DE 13-1). The Court finds this document central to Plaintiffs' claims. Also, Plaintiffs have not disputed the authenticity of the document. As such, the Court will consider the Agreement in connection with this motion. *See FM Holdings, Ltd. v. Banc of Am. Secs., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010) (noting that courts may consider evidence outside the pleadings on a motion to dismiss, provided (1) the evidence is central to the plaintiff's claim, and (2) the parties do not dispute authenticity).

In general terms, the Agreement called for Plaintiff's P.A. to provide anesthesiology services as a contractor at designated hospitals. (DE 13-1). The Agreement called for such services to be provided for one-year, automatically renewable terms. (DE 13-1 ¶ 5.A). The Agreement also contained certain termination provisions, further discussed below. Of significance here, Plaintiff was not a signatory to the Agreement in his individual capacity. Likewise, co-Defendant Envision was not a signatory to the Agreement.

In October 2023, Plaintiff joined the staff at JFK North Hospital in his capacity as a contractor for Emcare. (DE 1 ¶¶ 17-18). In March 2024, Plaintiff traveled to Gaza as part of a humanitarian mission under the World Health Organization to provide medical treatment to victims of the conflict. (DE 1 ¶ 20). Upon his return, Plaintiff shared images of his trip, discussed

his experiences with his colleagues at JFK North Hospital, and spoke at several public events about the humanitarian crisis in Gaza.  (DE 1 ¶ 20).

Plaintiff alleges that, upon his return from Gaza, he began to suffer from discrimination based on his Arab ancestry and Islamic religion.  (DE 1 ¶ 21).  He made complaints to Emcare and Envision regarding this discrimination, to no avail.   (DE 1 ¶¶ 35-36, 38, 40, 42).  The complete details of the alleged discrimination are not relevant to the pending motion.

On March 6, 2025, Plaintiff and his P.A. received a letter from Envision on behalf of Emcare.  (DE 1-1).  The letter provided as follows:

> I am writing on behalf of [Emcare].  As you may be aware, [Envision], directly or through an affiliated entity, provides various management services to [Emcare], including but not limited to management of its relationships with clinicians.

> This letter is written to inform you, that pursuant to Section 5.B. of your Agreement with [Emcare], effective as of March 6, 2023, [Emcare] is terminating your agreement without cause effective April 5, 2025 (the "Termination Date").

(DE 1-1).

Based on the above facts, Plaintiffs allege the following three counts against both Defendants as follows:

Count I:       discrimination based on national origin in violation of 42 U.S.C. § 1981,

Count II:      unlawful retaliation in violation of 42 U.S.C. § 1981, and

Count III:     breach of contract based on violation of implied duty of good faith and fair dealing.

(DE 1 ¶¶ 56-72).  This motion followed.  (DE 13).

## II.    <u>LEGAL STANDARD</u>

By way of this motion, Defendants seek dismissal of Count III of Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  In evaluating a Rule 12(b)(6) motion to dismiss for failure to

state a claim, a court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," a mere "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## III.   DISCUSSION

Defendants seek dismissal of Count III on two grounds. In the Court's view, the first argument disposes of Count III in its entirety. Nevertheless, the Court will address both arguments for completeness.

### A.   Plaintiffs Have Not Alleged a Plausible Claim in Count III

First, Count III fails to allege a plausible claim for breach of the implied covenant of good faith and fair dealing. In Florida, every contract contains an implied covenant of good faith and fair dealing. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir.2005) (citing *Cox v. CSX Intermodal, Inc.*, 732 So.2d 1092, 1097 (Fla. 1st DCA 1999)). The covenant serves as a gap-filling default rule that comes into play "when a question is not resolved by the terms of the contract or when one party has the power to make a discretionary decision without defined standards." *Publix Super Markets, Inc. v. Wilder Corp. of Del.*, 876 So.2d 652, 654 (Fla. 2d DCA 2004). "[T]he implied covenant of good faith and fair dealing is designed to

4

protect the contracting parties' reasonable expectations." *Cox*, 732 So.2d at 1097.  Put another way, the implied covenant requires a party vested with discretion to act in a commercially reasonable manner that satisfies the reasonable expectations of the parties.  *See Sepe v. City of Safety Harbor*, 761 So.2d 1182, 1184 n.2 (Fla. 2d DCA 2000) (compiling cases for the proposition).

As an example, in *Hamilton v. SunTrust Mortgage Co.*, 6 F.Supp.3d 1300, 1304 (S.D. Fla. Nov. 6, 2015), a bank had a contract with its mortgagees that allowed the bank, in the event of a lapse in homeowners' insurance coverage on the mortgaged property, to "force place" insurance on the property and pass the cost on to the mortgagee.  The contract gave the bank wide discretion to select the force-placed insurance.  *Id.* at 1308.  The *Hamilton* court found that the plaintiffs stated a plausible claim for breach of the implied covenant of good faith and fair dealing where they alleged that the bank exercised its contractual discretion in bad faith by selecting excessively priced force-placed insurance in exchange for a kickback from the insurance company.  *Id.*  Such conduct violated the commercially reasonable expectations of the parties, thereby giving rise to a claim for breach of the implied covenant.  *Id.*

Florida law imposes two significant limitations on this doctrine.  First, the implied covenant of good faith and fair dealing must relate to the performance of an express term of the contract. *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1317-18 (11th Cir. 1999) (citing Florida cases).  In other words, the implied covenant is not a stand-alone "independent term" of the contract; it must be tied to an express term.  *Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc.*, 785 So. 2d 1232, 1234-35 (Fla. 4th DCA 2001).  In *Hamilton*, for example, the plaintiffs successfully tied

their implied-covenant claim to an express term of contract by way of the mortgage provisions that allowed the bank to force-place insurance.  6 F.Supp.3d at 1310.

Second, the implied covenant cannot be invoked to vary or override the express terms of the agreement between the parties.  *Weaver*, 169 F.3d at 1317-18 (citing Florida cases).  In *Avatar Dev. Corp. v. De Pani Const., Inc.*, 834 So. 2d 873, 874 (Fla. 4th DCA 2002), for example, a developer entered into a contract with a stucco contractor that expressly allowed the developer to terminate the contract "at any time for any reason by giving at least ten (10) days prior written notice."  Following a trial, a trial judge found that the developer breached the implied covenant of good faith and fair dealing by terminating the contract based on ulterior motives.  *Id.* at 875.

The Fourth DCA reversed, reasoning that the implied covenant cannot be used to contradict or override the express terms of the contract, which allowed termination "for any reason" on ten days' notice:

> The language of [the termination provision] was plain and unambiguous: [Developer] could terminate the contract at any time for any reason.  It was a valid contract with an enforceable termination clause. [Developer] complied with the terms of [the termination provision] in the Master Contract when it terminated [the contractor].  [Developer's] ulterior motive for [the contractor] termination has no relevance as [the termination provision] of the Master Contract provided [Developer] with the right to terminate [the contractor] at any time.

*Id.* at 876.  In sum, the implied covenant cannot be used to alter the bargain struck by the parties.

Applying these standards here, the Court finds that Count III falls victim to the rule articulated in *Avatar*.  Specifically, the Agreement in this case expressly allowed for two types of termination, with different levels of notice required for each.  First, the Agreement allowed Emcare to terminate "immediately" upon the occurrence of fourteen categories of events typically associated with for-cause terminations, such as misrepresentations, substance abuse, etc.  (DE 13-

1 ¶ 5(B)).  Next, the Agreement allowed "either party" to terminate "at any time" on 30 days'

notice for any reason at all:

> Either party may terminate this Agreement at any time by providing the other party
> with 30 days prior written notice.

(DE 13-1 ¶ 5(C)).  This provision had the practical effect of allowing a no-cause termination by

either party on 30 days' notice.

Like the plaintiff in *Avatar*, the Plaintiffs here cannot use the implied covenant of good

faith and fair dealing to vary or override the plain and unambiguous terms of their contract.  The

parties bargained for, and agreed to, a mutual right to terminate the Agreement "at any time" on

30 days' notice.  Under Florida law, the implied covenant cannot be invoked to alter the bargain

struck by the parties.  As such, Count III must be dismissed.

### B.    Lack of Privity

Given the conclusion reached in Part III.A above, the Court need not address Defendants'

remaining arguments.  Nevertheless, for the benefit of the District Judge and in the interest of

completeness, the Court will do so anyway.

Defendants' next argument seeks to narrow Count III solely to the parties to the Agreement.

(DE 13 at 4).  As currently pled, Count III names one plaintiff who is not a party to the contract

(Plaintiff himself) and one Defendant who is not a party to the contract (Envision).  As a general

matter, nonparties to a contract can neither bring claims under the contract nor be sued under the

contract.  Plaintiff has not articulated any plausible legal theory that would allow him to expand

the scope of Count III to impose rights or liabilities on nonparties to the Agreement.

The Court has considered, but finds unpersuasive, Plaintiff's arguments that he should be

permitted to sue both Envision and Emcare in Count III under a theory of "joint employers," citing

to *Lyes v. City of Riviera Beach, Fla*., 166 F.3d 1332, 1341 (11th Cir. 1999).  (DE 16 at 4).  The Court rejects this argument as *Lyes* involves the liability of employers for purposes of Title VII, not for breach-of-contract claims.  Plaintiffs cite no cases applying a joint employer theory in a breach-of-contract context.   Indeed, cases to address the issue have reached the opposite conclusion.  *See Arnott v. Holzer Health Sys.*, No. 2:22-cv-4552, 2024 WL 5187000, at \*16 (S.D. Ohio Dec. 20, 2024) (noting that "the joint employer doctrine applies only to employment liability, not breach of contract claims"); *Higgins v. Catalyst Exhibits, Inc.*, No. 21-cv-1021, 2022 WL 356019, at \*4 (E.D. Wis. Feb. 7, 2022) (granting motion to dismiss and rejecting application of joint employer doctrine to breach of contract); *Rho v. Vanguard OB/GYN Associates, P.C.*, No. CIV.A. 98-1673, 999 WL 228993, at \*4 (E.D. Pa. Apr. 15, 1999) ("The single employer and joint employer tests...[have] never been applied to breach of contract claims.") (cleaned up).

Accordingly, assuming the District Judge rejects the conclusion set forth in Part III.A above, the undersigned makes the following alternative recommendation:  Count III should be limited solely to the parties in privity of contract, i.e., Plaintiff's P.A. versus Emcare.  The undersigned's primary recommendation remains that Count III be dismissed in its entirety.

IV.     **RECOMMENDATION & NOTICE OF RIGHT TO OBJECT**

For the reasons stated above, the undersigned **RECOMMENDS** that the motion (DE 13) be **GRANTED** and that Count III be **DISMISSED**.  Plaintiffs should not be afforded the opportunity to file an Amended Complaint.  Based on the plain wording of the Agreement, Plaintiffs cannot cure the pleading deficiencies identified here.

The parties shall have fourteen (14) days from the date of being served with a copy

of this Report and Recommendation within which to file written objections, if any, with United States District Judge Aileen M. Cannon.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); 11th Cir. R. 3-1.

**IF A PARTY DOES NOT INTEND TO OBJECT TO THIS REPORT AND RECOMMENDATION, THE PARTY SHALL FILE A NOTICE TO THAT EFFECT WITHIN FIVE (5) DAYS.**

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach in the Southern District of Florida, this 16th day of April 2026.

RYON M. MCCABE
U.S. MAGISTRATE JUDGE